## Perry State Bank v. James Elledge.

1. BILLS AND NOTES—*Negotiable Paper Presumed to Have Been Regularly Issued for a Valuable Consideration.*—It is presumed that negotiable paper was regularly issued for a valuable consideration, and that the payee is a *bona fide* holder and entitled to recover the full amount thereof.

2. INSTRUCTIONS—*Excluding from the Consideration of the Jury the Inconsistency of Hypotheses Mentioned.*—An instruction to the jury that notwithstanding they might find both of the hypotheses therein mentioned to have been established, they should adopt that favorable to the defendant, and return a verdict in his favor, excluding from their consideration altogether the inconsistency of the two hypotheses under the evidence, and telling them, in effect, that they may utterly ignore that favorable to the plaintiff, is erroneous.

Appeal from the Circuit Court of Pike County; the Hon. THOMAS N. MEHAN, Judge presiding. Heard in this court at the May term, 1903. Reversed and remanded. Opinion filed August 28, 1903.

A. G. CRAWFORD and A. C. MATTHEWS, attorneys for appellant.

JEFFERSON ORR and L. T. GRAHAM, attorneys for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This case was before us at a former term, and the judgment reversed and remanded for error of the trial court in refusing to admit certain evidence offered in behalf of the appellant. (99 Ill. App. 307.)

A second trial resulted, as did the former, in a judgment for the defendant. Plaintiff appeals to this court for a second time, and urges a reversal of the judgment on the grounds that the verdict was contrary to the weight of the evidence, and that the court gave improper instructions to the jury. The suit is brought to recover upon a promissory note for $113.74, signed by appellee and one T. P. Elledge, dated September 1, 1897, and payable to appellant, ninety days after the date thereof. It was given, as claimed by appellant, in renewal of the balance due on a former note held and owned by appellant, for $158.74, payable to one Witham, secured by collateral, and upon which it is conceded a payment of $45 had been made. T. P. Elledge died before this trial and the suit was dismissed as to him. As to when, for what purpose and under what circumstances this note was given, are the matters of controversy between the parties, and the evidence is conflicting upon the question. Appellee contends that the Witham note, to renew

which appellant claims the note in suit was given, had been theretofore paid on August 30th, by T. P. Elledge, with money given to him by appellee for that purpose, and that the note in suit was given under the following circumstances. He testifies that on August 29, 1897, T. P. Elledge, who was the father of appellee, collected from one Zimmerman, on account of cattle sold by appellee to him, the sum of $100; that the money was handed to him by his father on the following day; that he returned it, together with the sum of $15, and instructed his father to take the money and pay the Witham note at the bank; that some seventy-six days thereafter, when he called at the bank to get the collateral which his father had failed to take up when he paid the note, the cashier, Gregory, informed appellee that the note had not been paid; that appellee then called his father in, and a controversy or dispute took place between the cashier and appellee's father; Gregory insisting that the note had not been paid, and appellee's father insisting that it had; that he himself had paid it; that the matter was finally settled by appellee giving the note in suit, with his father as security, under an agreement by Gregory that he would make thorough investigation of the matter and that if there had been a mistake it would be rectified; that he gave the note under protest to shield Gregory, who stated that he wanted it to protect himself from the officials of the bank.

T. P. Elledge, the father, on the former trial, testified that on Monday, August 30th, he took the $115 given to him by appellee, to the bank, and told Gregory that appellee had sent it to pay on a note; that he then gave the money to Gregory, who handed him back $1.26 in change; that witness then told Gregory that he would leave the note there until his son came to town, when he would get it; that $100 of the money he paid to Gregory came from Zimmerman, of whom he had collected it for appellee on the evening before. Dan Medaris, who testified that he was in the bank at the time, substantially corroborates the Elledges as to what was said by Gregory, and the date of the

transaction.   Both appellee and his father swear positively
that the money referred to was the only money either paid
to or deposited with the bank by T. P. Elledge from that
time forward.   Zimmerman testified that he paid T. P. El-
ledge for the cattle which he had bought of appellee, on Sep-
tember 2, 1897, and exhibited appellee's receipt for $100,
bearing that date; that he had never before or since paid
any money to either of the Elledges.   Gregory, the cashier
of appellant, testified, in substance, that on November 2,
1897, appellee came to the bank, and that he called his
attention to the fact that he had an overdue note there; that
appellee said that he thought it had been paid; that he
left and returned with his father; that the controversy
referred to by appellee then took place; that appellee finally
told him to " make out a new note," which he did, dating
it back to September 1st, the day the Witham note had
fallen due; that appellee then paid the accrued interest on
the Witham note, and the interest, ninety days in advance,
on the note in suit, and went away; that he soon afterward
returned and delivered the note to witness, signed by his
father and himself; that during the controversy, witness
told appellee he would look the matter up and if they found
they had made a mistake, they would rectify it; that the
paper was overdue, and that the directors of the bank did
not like to see overdue paper; that they would reprimand·
him if they did.   He denied that he said anything with
reference to protecting himself, other than as stated.   He
further testified that prior to that time, on September 6th,
after banking hours, T. P. Elledge came into the bank and
threw down some money and told witness to place it to his
son's credit; that witness placed the money, $90, to the
credit of appellee.   The check register of the bank, in evi-
dence, shows a credit to appellee of that sum under date of
September 6, 1897.   The books of the bank fail to show that
any further deposits were made to the credit of appellee
from that time on, but do show that by checks drawn on
and prior to October 13th, he drew from the bank all funds
to his credit.

Appellee denies that he ever sent any money to the bank for deposit, or any other purpose, during August or September, or ever afterward, except the money he sent to pay the note in suit; Gregory's testimony is corroborated by the books of the bank which the evidence tends to show were kept in the regular course of business and were true and correct, as to both the giving of the note, the payment of interest on both notes, and the depositing of the sum of $90 on September 6th. We think that the fact, which is undisputed, that appellee, who claims that he never authorized the deposit or furnished the money for that purpose, drew the $90, and used it without inquiring as to its source, tended to corroborate the cashier. The testimony of Zimmerman also tends to corroborate him in part. If the money used by appellee's father to pay the note was, in part, that collected from Zimmerman, as both the Elledges testify, the payment could not have been made prior to September 2d, the date upon which Zimmerman says he paid for the cattle, and the day the receipt bears date. We also think that Gregory's version of what took place when the note was signed, is much more probable than that of appellee. That appellee would give a note with security and pay interest thereon in advance for money that he claimed he had paid and did not owe, for the single purpose of protecting the cashier from criticism by the bank officials, seems to us preposterous. If the testimony of the appellee and his father is true, Gregory was not only guilty of perjury on the trial, but he has been guilty, as well, of falsifying the books of the bank, and of embezzlement, when but the comparatively paltry sum of $23 was at stake. This we are not prepared to hold. It is possible that T. P. Elledge, who was an old man and apparently very unfamiliar with business transactions, especially those relating to banking, might have been mistaken as to dates, amounts and what took place, but Gregory's story was either true or he knowingly testified falsely.

This suit is not brought on the Witham note. If it were, the defense of alleged payment of the same by T. P. Elledge

on August 30th, would be a proper plea, but we do not see how that defense can be interposed to the note in suit.

As we take it, the execution and delivery of the note being admitted, the contention of appellee that the note was given simply as a protection to the cashier, subject to being surrendered if it was ascertained on investigation that the Witham note had been paid, amounts to but a plea of a want of consideration.

It is presumed that negotiable paper was regularly issued for a valuable consideration, and that the payee is a *bona fide* holder, and entitled to recover the full amount thereof. Parsons N. & B. 189. The burden thereupon devolved upon appellee to establish his defense by a preponderance of the evidence. If the evidence establishes by that degree of proof that the Witham note was paid prior to the giving of the note in suit, appellant should not and can not recover. It is admitted by appellee that but one sum of money was delivered to the bank, on his account, by his father, during the months of August and September, and the only questions involved in the case are as to when and for what purpose the said payment was made, and did his father, on August 30th, pay $113.74 to take up the Witham note as contended by appellee, or did he on September 2d deposit $90 to the credit of appellee as contended by appellant. One of these contentions is true; the other could not have been.

By appellee's 23d instruction, the jury were told that "if you shall find from a preponderance of the evidence, that T. P. Elledge handed Robert Gregory, cashier, $113.74 on the 30th day of August, 1897, with directions to pay the said Witham note, your verdict should be for the defendant, although you may further find from the evidence that there was $90 put to James Elledge's credit on the 6th day of September, 1897, and afterward checked out by said James Elledge."

The jury are told by this instruction, that notwithstanding they might find both of the hypotheses mentioned to have been established, they should adopt that favorable to the defendant, and return a verdict in his favor. It excludes

from their consideration altogether, the inconsistency of the two hypotheses under the evidence, and tells them, in effect, that they may utterly ignore that favorable to the plaintiff.

It is fundamental that, in arriving at their verdict, the jury should consider all of the evidence in the case, and in this case, if both states of fact mentioned in the instruction were established, which was impossible under the evidence, they should have considered them together in arriving at their verdict.

We are of the opinion that the instruction was erroneous under the evidence in the case, and that the jury were probably misled thereby.

For the reason that the verdict was not sustained by a preponderance of the evidence, and because of the giving of appellee's 23d instruction, the judgment will be reversed and the cause remanded.